## HOWAT ET AL. *v.* STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

Nos. 154 and 491. Argued February 27, 28, 1922.—Decided March 13, 1922.

1. The constitutionality of a state statute presenting very important questions should not be decided unless the case before the court so requires. P. 184.

2. Whether the Kansas Industrial Relations Act (Laws 1920, c. 29), in providing in effect for compulsory arbitration of labor controversies in certain industries before an administrative body - whose orders it makes reviewable and enforceable through the State Supreme Court, violates the Federal Constitution, is not determinable upon a review of a judgment of that court sustaining, as a separable feature of the act, the power it gives the administrative body to call witnesses to testify in a general investigation of indus-

trial conditions and the power of the State District Court, of general jurisdiction, to order their attendance and to enforce their obedience through contempt proceedings.  P. 185.

3. An injunction issued by a court of general jurisdiction and equity powers upon proper pleadings, and served upon parties within the jurisdiction, must be obeyed, even if erroneous and based upon an invalid statute, until set aside by orderly review.  P. 190.

4. Where a sentence imposed by the Kansas District Court for contempt in disobeying an injunction issued in a suit brought by the State to prevent execution of a conspiracy to cause a general strike and cessation of work in coal mines contrary to the state laws, including the Industrial Relations Act, *supra*, was affirmed by the State Supreme Court independently of that act (though its constitutionality was drawn in question) upon the ground that the District Court had general power to grant the injunction and that the validity of the injunction could not be questioned collaterally in the contempt proceeding, *held* that the judgment of affirmance, having a non-federal basis, was not reviewable by this court.  P. 189.

Writs of error to review 107 Kans. 423; 109 Kans. 376, dismissed.

WRITS of error to review two judgments of the Supreme Court of Kansas affirming sentences to confinement for contempt.

*Mr. Redmond S. Brennan,* with whom *Mr. John F. McCarron* and *Mr. Frank B. Hegerty* were on the briefs, for plaintiffs in error.

*Mr. John G. Egan, Mr. Moorfield Storey* and *Mr. F. Dumont Smith,* with whom *Mr. Richard J. Hopkins,* Attorney General of the State of Kansas, *Mr. Baxter D. McClain* and *Mr. Harold S. Davis* were on the briefs, for defendant in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

These are two writs of error to the Supreme Court of Kansas sued out (§ 237, Judicial Code) with the hope and purpose of testing the validity, under the Federal Consti-

tution, of the act of the Legislature of Kansas creating a Court of Industrial Relations. C. 29, Special Session, Laws of Kansas of 1920.

In No. 154, the plaintiffs in error were defendants in proceedings taken in the District Court of Crawford County, Kansas, to compel them to attend and give testimony under subpoena before the Court of Industrial Relations. They had refused to appear. After arrest and a hearing, they were sentenced to confinement in jail until they should comply with the order. *State v. Howat,* 107 Kans. 423.

In No. 491, the plaintiffs in error were sentenced to imprisonment for a year as punishment for violation of an injunction issued by the same District Court forbidding them to call or cause a strike among the employees in certain coal mines in Crawford County. *State* v. *Howat,* 109 Kans. 376.

We are of opinion that in neither case is the Kansas Industrial Relations Act presented in such way as to permit us to pass upon those features which are attacked by the plaintiffs in error as violative of the Constitution of the United States.

The main purpose of the act is to create an administrative tribunal to arbitrate controversies between employers and employees in certain industrial, mining and transportation businesses which the act declares to be affected with such a public interest that their continuity is essential to the public peace, the public health and the proper living conditions and general welfare of the people. The board, miscalled a court, is given power to make investigations on its own initiative or upon complaint of interested persons to consider the wages, the return to capital, and the conditions surrounding the workers in any such employment and business, to summon all necessary parties in interest, to call and examine witnesses, and, after hearing, to make its findings and orders stating specifically

the terms and conditions, including wages, upon which such industry or employment shall be carried on in the future.   In case the parties do not obey the orders the board is given authority to apply to the Supreme Court of Kansas to compel compliance, and the Supreme Court is authorized to review the orders upon the evidence already heard, and such other new evidence as that court shall permit, and enter and enforce a proper judgment. The board is also authorized, with the consent of the Governor, to make general investigations into industrial and economic conditions to familiarize itself with industrial problems as they may arise.   In effect, the act provides for compulsory arbitration between labor and capital in certain industries and employment.   It forbids an injunction against a workman or employee to prevent his quitting his employment.   It is directed against strikes and lockouts and their declared wasteful and destructive effect, and conspiracies, picketing and intimidation to induce them.   Obviously we should not pass upon the constitutional validity of an act presenting such critical and important issues unless the case before us requires it.

In No. 154, Howat and the other plaintiffs in error were subpoenaed to appear before the so-called Court of Industrial Relations to testify in an investigation into conditions existing in the mining industry in Cherokee and Crawford Counties.   They failed to appear.   The powers of the tribunal in such a case are set forth in § 11 of the act, reading in part as follows:

"Said Court  .  .  .  shall have the power and authority to issue summons and subpoenas and compel the attendance of witnesses and parties  .  .  .  and to make any and all investigations necessary to ascertain the truth in regard to said controversy.   In case any person shall fail or refuse to obey any summons or subpoena issued by said court after due service then and in that event said court is hereby authorized and empowered to take proper

proceedings in any court of competent jurisdiction to compel obedience to such summons or subpoena."

Under this section, the board made application to the District Court of Crawford County, the court of first instance of general jurisdiction in that county, to issue an order directing the plaintiffs in error to attend the board and testify. This order was issued, duly served and disobeyed. The contemnors were then brought into court by attachment. Their plea that the legislation under which they were subpoenaed was void was held to be insufficient and they were committed to jail until they should comply with the subpoena. The contemnors appealed to the Supreme Court of the State, which affirmed the action of the District Court, holding that, without regard to the validity of the particular provisions of the Industrial Relations Act of which they complained, they were under legal obligation to obey the subpoena and were in contempt for not doing so. The court invited attention to § 28 of the act, which provides that, " If any section or provision of this act shall be found invalid by any court, it shall be conclusively presumed that this act would have been passed by the legislature without such invalid section or provision, and the act as a whole shall not be declared invalid by reason of the fact that one or more sections or provisions may be found to be invalid by any court; " and pointed out that, even if the compulsory features of the act, to the constitutionality of which the plaintiffs in error objected, were invalid, there still remained in the act provision for investigation and findings by the Industrial Relations Court, in respect to which the power of the Legislature was indisputable and in furtherance of which the machinery for compelling the attendance and testimony of witnesses was appropriate. The court relied on the decision of this court in respect to a similar provision in the Interstate Commerce Law in which the Interstate Commerce Commission was author-

ized to secure attendance of witnesses at any investigation by it, through a proceeding before a Circuit Court of the United States. *Interstate Commerce Commission v. Brimson,* 154 U. S. 447, 448, 449. It would seem to be sustained also by the decision of this court in *Blair v. United States,* 250 U. S. 273, wherein it was held that a witness summoned to give testimony before a grand jury in the District Court of the United States was not entitled to refuse to testify, when ordered by the court to do so, upon the plea that the court and jury were without jurisdiction over the supposed offense under investigation because the statute denouncing the offense was unconstitutional.

But even if we did not agree with the state court on this point, what we have said shows that the case was decided and disposed of by that court without any consideration of the application of the Federal Constitution to the features of the Kansas statute of which complaint is made. Even if those features are void, these contempt proceedings the state court sustains on general law. We can not, therefore, consider the federal questions mooted and assigned for error. *Southern Pacific Co. v. Schuyler,* 227 U. S. 601, 610; *Leathe v. Thomas,* 207 U. S. 93, 98; *Giles v. Teasley,* 193 U. S. 146, 160; *Hopkins v. McLure,* 133 U. S. 380, 386; *Hale v. Akers,* 132 U. S. 554, 564.

In No. 491 the State of Kansas on the relation of its Attorney General and the County Attorney of Crawford County, filed a petition in the District Court of Crawford County asking an injunction against Howat and others, one hundred and fifty in number, members of local unions of the United Mine Workers of America, District No. 14. The petition averred that defendants were conspiring, threatening, and about to direct the officers to call a general strike in the coal mines of Crawford, Cherokee and Osage Counties, Kansas, and cause a cessation of work in them, thereby endangering the peace and order of the communities in which said mines were located with in-

tent to violate the laws of Kansas and particularly the Court of Industrial Relations Act, that in pursuance thereof they were intimidating their co-workers and other employees of the operators of the mines, that the purpose of the conspiracy was to stop the operation of the railroads, and of the buildings, institutions and industries of the State in the conduct of its government affairs and to cut off the supply of coal for household and other uses throughout the State, that all of said acts would seriously affect and injure the public welfare and the public health of the people; that a similar conspiracy a year before had been carried out resulting in great suffering and loss to the people, and endangered their lives and health to such a degree that the state authorities were compelled to take possession of the mines and operate the same, and that, in the light of this result, the present conspiracy was being set on foot. The petition further averred that this conspiracy was directed especially to a nullification of the statute creating the Court of Industrial Relations and its purposes. It was alleged that the plaintiff was without adequate remedy at law and that irreparable loss and injury to the State and the people thereof would ensue unless the conspiracy of defendants was enjoined. The defendants pleaded in answer to these charges that, " whatever cessation of work, or intent to cease work, there may have been, was solely and only in the exercise of their lawful rights, for the purpose of improving their working conditions and increasing their wages; and whatever effect their ceasing work may have had upon the production of coal, was incidental to and in the exercise of their legal and constitutional rights; and the stoppage in the operation of the production of coal, if any, was not the primary purpose, but merely the incidental effect incident to the exercise of their lawful rights." They further alleged that the Industrial Court Act was void because in violation of the Federal Constitution and the

rights of defendants thereunder, and so the court was without power to issue an injunction, as prayed.

The case came on for hearing, the State introduced evidence, and the defendants demurred to the evidence. The demurrer was overruled. The defendants declined to introduce evidence and rested. The court found the averments of the petition true and made permanent the temporary injunction already awarded. By this, the defendants were enjoined "from directing, ordering or in any manner bringing about the hindering, delaying, interference with or suspension of the operation of any coal mines in the counties of Crawford, Cherokee or Osage, in the State of Kansas, and of the mining of coal at any of said mines, and from causing the miners and members of said labor union to quit their work at said mines for the purpose or purposes of hindering, delaying, interfering with or suspending the operation of any coal mines in said counties, and from intimidating by threats, abuse, or in any other manner, any person or persons with intent to induce such person or persons from accepting employment or remaining in employment at said mines, and from in any way whatsoever carrying out any conspiracy for the execution of any of said purposes." In other clauses of the injunction, defendants are enjoined from maintaining and carrying on a conspiracy with the intent to evade the provisions of the Industrial Court Act, and to prevent persons from appearing before it by picketing or otherwise. The order expressly excluded from its purpose and effect the enjoining of any person against quitting his employment. Thereafter the Attorney General filed an affidavit charging that the defendants had violated the injunction by combining to order and compel a strike at two mines in Crawford County. At a hearing at which defendants were represented by counsel, the court found reasonable ground for believing that those of defendants who are plaintiffs in error here had violated

the injunction. They were arrested and brought before the court, whereupon the court directed the filing of a formal accusation of contempt against them. The defendants answered attacking the validity of the Industrial Court Act and of the permanent injunction, averring that they had not done anything unlawful, and denying that the accusation stated facts sufficient to constitute a violation of the injunction. The court found that the averments of the accusation were sustained, that defendants had directed the strike at the mines in question, that a cessation of work ensued, that it was done wilfully in disobedience to the injunction, and sentenced each of them to imprisonment for a year and to payment of the costs and confinement till the costs were paid.

On appeal, the Supreme Court of Kansas held that the District Court, a constitutional court of general jurisdiction (Constitution of Kansas, § 6, Art. III; General Statutes of Kansas 1915, § 2957), had general power to issue injunctions in equity and that, even if its exercise of the power was erroneous, the injunction was not void, and the defendants were precluded from attacking it in this collateral proceeding; that, aside from the Industrial Court Act, the District Court had power in this case to issue the injunction on principles identical with those applied in abatement of public nuisances. The court relied on the case of *In re Debs*, 158 U. S. 564. It held that, if the injunction was erroneous, jurisdiction was not thereby forfeited, that the error was subject to correction only by the ordinary method of appeal, and disobedience to the order constituted contempt, citing *State* v. *Pierce*, 51 Kans. 241. An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the

court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished. *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 450; *Toy Toy* v. *Hopkins*, 212 U. S. 542, 548. See also *United States* v. *Shipp*, 203 U. S. 563, 573.

It is to be observed, moreover, that the injunction suit in the District Court was not the enforcement of the Industrial Relations Court Act. It was a proceeding wholly independent of that act and the District Court in entertaining it did not depend on the constitutionality of that act for its jurisdiction or the justification of its order. The State Supreme Court, it is true, did go into an extended discussion of the constitutional principles upon which the Industrial Court Act could in its opinion validly rest, but, as the court itself had before intimated, the discussion was not necessary to the conclusion which it had reached in sustaining the sentence for contempt.

As the matter was disposed of in the state courts on principles of general, and not federal law, we have no choice but to dismiss the writ of error as in No. 154.

*Writs of error dismissed.*